Good morning, Your Honor. So, are you going to do all the argument, or? Your Honor, I'll do the first five minutes, and I'll reserve five for my colleagues. But then you have no rebuttal time. I'm sorry, Your Honor. I'll take the first five minutes, and then for my rebuttal, I'll reserve five minutes for my colleagues. So we'll split it half and half. I'll take the first five minutes, the government will take their ten, and then for rebuttal, my colleagues will have the finishing five minutes. May it please the Court, my name is Nick Veith, and I represent Ms. Silkeutsabay. And the issue before this Court, as I start off, because the Low Van or McIntosh-Low Van-Kinniston decision has already come out, now becomes... So McIntosh is kind of procedural for us, right? Yes, Judge. We still don't really know what Washington law is about how you calculate those 15 or 30 plants, right? So, Your Honor, in looking at the McIntosh-Kinniston decision, you see that they have already established that individuals have standing. They also looked at that we are able to have an evidentiary hearing to determine what this strict compliance with state law means. Let's just say if the facts here were 10,000 plants, not 1,000. Yes, Judge. Because my understanding is that all of the defendants are, if they're dealing with 15 and 30, they're coming up with a theory where if they sort of, they have various clients, they amalgamate it, that they're not, in fact, in violation of the law, right? Yes, Judge. But if they had 10,000 plants, there'd be no way that they could be compliant with the law. That is incorrect, Judge. So even if there were 10,000 plants, we'd have to remand it? Yes, Judge, because... You're losing me. At 1,000, I think you have a decent argument. At 10,000, I'm not sure. And even looking... How about a million plants? Don't we still have to go back? Possibly, Judge, because, again, we look to the affirmative defense, and that's where the Marquardt decision's holding becomes so important in our case. Marquardt indicates that if an individual, that being a designated provider in Washington State, has a designated provider form to provide for a patient, a qualified patient, then they are able to grow up to 15 plants for that individual patient. If that designated provider has 1,000 of these forms, then, Your Honor, it would be up to 15,000 plants. But we don't have that here. We do not. So that's what I'm saying. If we had 10,000 plants in this instance, I don't think your argument would be as strong as with 1,000 here, there's an argument that you might be able to still be in compliance with Washington law. I believe we are in compliance with Washington law. But we don't have to decide that here because we don't know what Washington law says. What takes place at this evidentiary hearing if you get back down to the district? So, Your Honor, our position would be in reading and analyzing the McIntosh decision that we would have an evidentiary hearing before Judge Rice where we would make a colorable claim that under Washington state law, the requirement would be to show a prima facie case that we are in strict compliance with Washington state law. At the time of the? Marquardt. At the time of the arrest. Yes, Judge. But the district judge could also certify the issue to the Washington court, right? Because we don't know exactly what the Washington Supreme Court is going to say, right? We don't know, Your Honor, what a, first off, a Washington state prosecutor would even take this case and prosecute it. Then we don't know whether or not a Washington state judge would look at all of these affirmative defenses and all of the prima facie evidence that we would advance to make the argument that we are in full compliance under state law. And then next, what a potential Washington state jury would decide. So until the government has a conviction, a Washington state conviction in their hand, or some other administrative ruling saying we're out of compliance, this injunction should hold, Your Honor. What happens to the other counts that were not related to the marijuana? The other counts? And, Your Honor, I was, I represented Kim Lay-Sokutsabai, and I guess I would just reserve that for my other co-counsel to address that issue. I believe it involves a firearm, and I think, again, Judge. All right, that's fine, that's fine. Yes. And so, Your Honors, that would be, I think, the best procedure to direct Judge Rice, and then ultimately it would be Judge Nielsen in the Kinison matter, to allow the defense to make this colorable claim that, yes, under Washington state law, we can show a prima facie case that we are in strict compliance with Washington state law, namely Marquardt. Okay. Thank you, Judge. Good morning. My name is Earl Hicks, and I represent the United States on this case. First of all, our position is that they not only violated federal law, but they also violated state of Washington law. And our position is that the state of Washington cannot regulate what takes place outside of its borders. And in this case, what happened is that marijuana plants and the supplies for the marijuana plants were brought from California. The purpose behind this was a profit purpose. The government doesn't even consider this a medical use of marijuana case at all. If you look at the definition of what's medical use of marijuana, it means the production, possession, or administration of marijuana for the exclusive benefit. Does McIntosh have any applicability? Because it was subsequent to when the district judge sentenced, right? Yes. And we're in the Ninth Circuit, and we're bound by our own precedent, whether we like it or not. No. So does McIntosh have any applicability here? McIntosh has applicability. Because we can't see the elephant in the room. McIntosh has applicability in the sense that if there were any prima facie showing whatsoever, then it should be remanded. But this is a case where there's a clear violation of federal law. This is a clear violation, and the state had no authority to regulate or to allow people from other states to bring marijuana, which they had started growing, in California to the state of Washington. And then if we look at what would happen at a hearing. Okay, but McIntosh, I'm having trouble. How do I distinguish what they did in McIntosh from the facts in your case? Because the marijuana came from California, and we have significant proof that the marijuana came from California. We had defendants testify, cooperating defendants testify to that. We have the statement of facts, which the defendants agreed to. Isn't that why you might win at the hearing? I mean, the district court didn't have a hearing at that point, just said, hey, it says 15 or 30, that's it. Under McIntosh, though, first of all, the argument of counsel is that everything has to go through the state first. That's not required by McIntosh. And McIntosh says that we want to continue it, that with the case, it has to be remanded. We want to continue with the case. But we also believe that there are certain circumstances where there shouldn't be a remand when there are certain findings which are made or when there are certain things that are clearly a violation of federal law. Now, that's the one aspect to it. Just to clarify, Section 538 says you can't spend money to prevent these states from implementing their own state laws that authorize use, distribution, possession, or cultivation of medical marijuana. You're saying that that's a total interest state protection, that once they get the marijuana or anything from other locations, so if they buy the growing equipment or whatever they get besides the marijuana, they set up the facility and they assemble those machines or materials come from California, does that create an interstate hook for you to avoid 538? Your Honor, I'm not arguing that at all. What I'm arguing is the facts in this case. The people came to the State of Washington from the State of California and they brought with them marijuana plants. And in addition to that, they brought with them materials to grow. But what's important is that they came to the State of Washington with the plants. They transported them in interstate commerce, marijuana plants that they had started to grow there, and then they continued, this is a continuing crime in my mind, they continued to grow those same marijuana plants in the State of Washington. The problem that we have is that all it takes now is for somebody to say that this is medical marijuana. So wait a minute, let me just clarify one thing. So I'm just looking at the indictment in Silkus Bay? Silkus Bay is how I said it. Some other people said Sequel Sabe, there's a number of… And these are just, you know, at alleged manufacturing. Count one, count two. I think there's a gun charge, isn't there? Yes. It doesn't say anything about transporting marijuana plants from California to the indictment. No, it doesn't say, but those are the facts of the case. And most certainly manufacturing can take… But they're being charged for manufacturing in Washington. Yes, and what they did… So are you saying… Well, I don't know what you're saying with respect to this particular… Are you saying that under Washington law would not tolerate? No, I'm saying that Washington cannot regulate what happens outside of the state and that this, in effect, is a continuing crime where you start to manufacture the marijuana in the State of California and then you bring it to the State of Washington and you have this interstate nexus. And then my argument… It doesn't say here that they conspired to transport between California and Washington a thousand marijuana plants. Well, it's included in the conduct. It's an overt act in the conspiracy charge. It is? We don't have to charge an overt act. In manufacture? Excuse me? In manufacture? It's an overt act to start to grow in one location and then bring it to the State of Washington. So you're saying that if they were within the – clearly within the limits of the 15 plants or whatever it is, but they had brought – done what they'd done. They've come from California, so they're totally legal under Washington law for what they're doing in Washington. It's purely medical marijuana. You're saying that 538 wouldn't apply because they moved their plants from California. Yeah. Are there any cases interpreted 538 that way? No, there aren't any. And then why didn't you allege in the indictment that that's what you were going after? 538 did not exist at the time that we indicted this case. Okay, that's of course right. Now, I just want to, again, what happens here is there has to be strict compliance with State law. And there has to be, in my mind, before you have any type of a hearing, evidence to make a prima facie showing. And what happens is there's no prima facie showing. The record is clear, if you look at that, that there were very little records kept. We asked for the records from one of the defendants, and what we got were not the records that they were designated providers at all. We didn't get those records. What we got were records that they were taking marijuana on consignment and then selling it for a profit. Now, that's the only records that are out there that we have. In addition to that, there's an argument made by the defense that all of the defendants were, in effect, designated providers. That's clearly an incredible argument in my mind. Everything you're saying strikes me as that there matters for the district court to determine whether or not there's a prima facie showing that they're in compliance with Washington law. Well, you can present all of this to the district court. Since you're not going to have any rebuttal time either, there was some question that I think that the other counsel are going to address about what happens to all the other charges. Some people had the guns and stuff like that. Well, what we did is we negotiated a plea. They could only appeal on this issue. On this issue, it was a conditional plea. I think there's a limited number of cases that would be referred back under McIntosh. Frankly, I think the government's position is that there's not even a prima facie showing here and that every time that somebody says it's medical marijuana, that we shouldn't be going through this exercise in the sense that the 1,000 plants which you talked about, that's an out. For this, with saying that I have 300 patients, that's what she said. There's nothing in the record that shows that whatsoever, nothing. Let me get to the district court. They may not be able to make their prima facie showing. Your Honor, I appreciate that very much, and I understand that. In effect, it doesn't really matter in the sense because if the court's predisposed to do that, which I understand clearly, clearly what will happen is we'll be able to make the showing in the district court. They have a few minutes for rebuttal. Thank you, Your Honor. Thank you. Thank you. May it please the Court, Pete Schweda representing Lally Yang. Fellow Buesel, I want to save two minutes for him because his client does have one of the gun charges. My client does not. A couple of responses, this interstate transportation is a red herring. It's not an element of the offense. That's not a crime under the United States Code. Foreign commerce of drugs is, but there is no element. It's not in your model instructions. It's not in the statute. As far as the amount of marijuana, I want to remind the Court that the low van part of the McIntosh case dealt with 30,000 plants, and that was remanded for hearing. Here, the evidence is that my client had 300 patients, and at 15 plants per patient, that would equal 4,500 plants, so we're way underneath that. The Shoup case dealt with four pounds of marijuana being transported through Oregon. He was convicted in Oregon for those four pounds, but in Washington he was allowed to present the affirmative defense. The District Court should be the gatekeeper just like the Washington State Courts would be. In other words, the elements are that you make a prima facie showing, which we have done here, that two, the evidence must be most strongly interpreted in favor of the defendant. That's Washington State law. And once they make the prima facie showing, it's a jury question. The Court at that point cannot weigh conflicting issues, issues of fact. And the Washington Courts have acted as the gatekeeper in these cases. For example, in Marquardt, Mr. Marquardt was not able, the delivery counts were affirmed because the prescriptions were not a non-tamper-resistant paper. In Ginn, the defendant did not qualify as a primary caregiver because there was no statement from a doctor saying weighing the benefits of marijuana outweigh the health risks. I would like to reserve the rest of the time for Mr. Wetzel.  My name is Philip Wetzel, and I represent Bulang Sokudzebe. We didn't brief the issue that you asked about what happens to the other counts. Our position is that the government prosecuting the 924C, the possession of a firearm in relation to a drug trafficking case, if they are not able, because this is a medical marijuana case, to spend funds on the underlying medical marijuana case, then that would include the gun case. Thank you. Is your client in custody? Yes, Your Honor. What was that? But you signed kind of a waiver, right? I mean, it was a plea, right? Yes, but we are— But wasn't it a limited appeal? Yes, Your Honor. It was an appeal on the medical marijuana issues. Okay. Thank you.  The matter is submitted. Thank you, counsel.
judges: Fisher, Paez, Callahan